ams
# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**KENNETH BURDETTE, et al.,**  )
)
**Plaintiffs,** )
)
vs. )
) Case No. 10-1083-JAR
**VIGINDUSTRIES INC.,** )
)
)
**Defendant.** )
_____)

## MEMORANDUM AND ORDER

This case was removed from Reno County, Kansas District Court on March 23, 2010. Plaintiffs bring this action individually and as representatives of a putative class of individuals who reside and own property in the Careyville addition of Hutchinson, Kansas. Plaintiffs allege various tort claims stemming from land subsidence and sinkhole development that has occurred on abandoned salt mines at the Carey Salt Company solution mining plant in Careyville, Kansas, located on land now owned by defendant Vigindustries, Inc. This matter is before the Court on defendant's Motion to Dismiss (Doc. 9) pursuant to Fed. R. Civ. P. 12(b)(6). The motion is fully briefed and the Court is prepared to rule. As described more fully below, defendant's motion to dismiss is granted.

**I.      Standard**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[1] To survive a motion to dismiss, a complaint must present factual allegations, assumed

---
[1] Fed. R. Civ. P. 12(b)(6).

to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[4] but requires more than "a sheer possibility."[5]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly* seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[6] *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth,

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[4] *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009).

[5] *Id.*

[6] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[7] *Id.* (citing *Twombly*, 550 U.S. at 556).

[8] *Iqbal*, – U.S. –, 129 S. Ct. at 1949-50.

or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

If the court on a Rule 12(b)(6) motion looks to matters outside the complaint, the court generally must convert the motion to a Rule 56 motion for summary judgment. However, the court may consider documents which are referred to in the complaint.[12]

## II. Background

The following facts are alleged in plaintiffs' Petition[13] and the Court draws all reasonable inferences in their favor. Careyville, Kansas is located in the southeastern portion of the City of Hutchinson, Kansas and consists of approximately 323 residences built adjacent to the former Carey Salt Company solution mining plant. The Carey solution mining plant included a field with 121 solution mining wells over approximately 200 acres, drilled between 1903 and 1998. Many of the wells show a casing at the ground surface, but for many of the older wells, there is no surface expression. In 1999, all solution mining operations on the Carey Salt Company land ceased. Defendant Vigindustries acquired ownership of the abandoned salt mines in 2004.

The solution mining in the Careyville addition has led to substantial land subsidence and

---

[9]*Id.* at 1950.

[10]*Id.*

[11]*Id.* at 1949.

[12]*See GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384-85 (10th Cir. 1997).

[13](Doc. 1, Ex. A.)

3

sinkhole development; a large sinkhole developed in the Careyville addition in 2005. Defendant conducted testing at select wells in the area in 2008 and announced in August 2009 that it planned to offer to purchase over thirty homes on the north and east perimeter of Careyville due to the threat of further subsidence and sinkhole development and the threat that the abandoned wells pose a risk to public safety.

In September 2009, Vigindustries entered into an agreement with the Kansas Department of Health and Environment ("KDHE") and the City of Hutchinson regarding Vigindustries' proposed purchase of the identified properties in the Careyville addition and the eventual disposition of those properties ("Agreement").[14] Under this Agreement, Vigindustries agreed to attempt to purchase thirty-seven homes identified in the Agreement's Appendix A. If the property owners refuse to sell to Vigindustries, the City of Hutchinson has agreed to initiate inverse condemnation proceedings under its power of eminent domain to maintain public safety. After these properties are purchased by Vigindustries or acquired by the City of Hutchinson, Vigindustries will demolish the homes located on the properties, install a fence around them, and secure and maintain them.

Defendant filed the instant motion to dismiss on April 29, 2010. Thereafter, the parties stipulated that Parts 1 and 3 of defendant's motion to dismiss should be granted—plaintiffs' claims in Counts I, II and III of the Petition based on alleged activity occurring before January 6, 2000, i.e., more than 10 years before this action was filed, was dismissed, and Count IV was dismissed in its entirety.[15] Therefore, the only remaining issue on defendant's motion to dismiss

---

[14]*See* Doc. 1, Ex. A ¶ 23; Doc. 10, Ex. A.

[15](Doc. 17.)

4

is whether plaintiffs state a claim for relief for strict liability based on abnormally dangerous conditions.

**III. Discussion**

Count II of the Petition alleges "Strict Liability for Ultrahazardous Activity." Plaintiffs articulate this claim as follows: "The mining of salt and the creation and maintenance of an abandoned salt mines [sic] by VigIndustries and its predecessors in interest is an ultra hazardous activity."[16] Defendant moves to dismiss, arguing: (1) any strict liability claim premised on the activity of salt mining is barred by the statute of repose, as all mining operations ceased before 2000; and (2) maintaining abandoned salt mines is not an abnormally dangerous activity as a matter of law. Because plaintiffs have stipulated that the statute of repose bars all alleged activity occurring prior to 2000, this portion of their strict liability claim has been dismissed. The only remaining issue is whether plaintiffs state a plausible claim for relief that maintenance of the abandoned salt mines constitutes an abnormally dangerous activity under Kansas law.

Kansas has adopted the Restatement (Second) of Torts §§ 519 and 520 to analyze claims involving strict liability for abnormally dangerous activities.[17] Section 519 provides the general rule:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

---

[16](Doc. 1, Ex. A ¶ 56.)

[17]*Williams v. Amoco Prod. Co.*, 734 P.2d 1113, 1123 (Kan. 1987).

5

Section 520 lists the factors the Court is to consider in determining whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

All of the factors are important and usually several will be required to establish strict liability.[18] "The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care."[19] Whether a given activity is abnormally dangerous is a question of law for the Court to decide.[20]

Plaintiffs first argue that maintaining the abandoned salt mines poses a high degree of risk of sinkholes and land subsidence to the residences of Careyville. Plaintiffs contend that many of the wells cannot be located or identified because the old wells have no surface expression and point to the fact that a large sinkhole developed in 2005. They argue that defendant's testing showed that the abandoned wells pose a further risk of subsidence and sinkhole development, leading to defendant's agreement with the KDHE and the City of Hutchinson. Defendant responds that these risks do not pertain to the activity of maintaining the

---

[18] Restatement (Second) of Torts § 520, cmt. f.

[19] *Id.*

[20] *Id.* cmt. l.

abandoned wells, but instead, to the salt wells themselves and the risks associated with them.

Plaintiffs allege in their Petition that land subsidence and sinkhole development pose a risk of harm to plaintiffs' homes and property as well as inconvenience, discomfort, annoyance, and prospective injuries to their health. These are factual allegations that the Court must accept as true for purposes of deciding the motion to dismiss. The Court finds that these allegations, when taken as true, establish the abandoned salt mines pose some risk of harm to plaintiffs' property and to their health.[21] The Court discusses the causal link between maintaining the abandoned salt mines that the likelihood of land subsidence and sinkhole development under the next factor.

Plaintiffs contend that if 200 or more acres of land containing the abandoned salt mines collapsed, it would result in extensive harm to the residences in Careyville. Defendant argues that plaintiffs' claims of harm, given the facts as alleged, are exaggerated and that the likelihood of the harm is not great because the harms alleged by plaintiffs are not caused by the maintenance of the wells, but instead, by the existence of the wells themselves. The Court agrees. Plaintiffs do not allege in the Petition that defendant's maintenance of this land increases the likelihood that all 200 acres would "collapse." Assuming as true plaintiffs' factual allegation that the mining well field includes 121 wells over approximately 200 acres and that mining activity prior to 2000 led to substantial land subsidence and sinkhole development, it is not reasonable to infer

 that defendant's activity would increase the likelihood that all of these 200 acres will collapse.

---

[21]The Court agrees with defendant, however, that plaintiffs' reliance on *Nida v. Am. Rock Crusher Co.*, is misplaced. 855 P.2d 81 (Kan. 1993). That decision did not apply strict liability; it was an action in negligence. *Id.* at 86–87.

Plaintiffs do not specify what constitutes defendant's "maintenance" of the abandoned salt mines, beyond the plans outlined in its Agreement with the KDHE and the City of Hutchinson. To the extent "maintenance" of the salt mines consists of the plan to buy several homes located near the 2005 sinkhole, demolish those homes, and build a fence in order to prevent future harms associated with land subsidence and sinkhole development, it is counterintuitive that this activity would increase the likelihood of harm to plaintiffs' property and health. To the contrary, assuming the facts alleged in the Petition to be true, defendant's "maintenance" of the abandoned salt mines involves plans to decrease the likelihood of future harms associated with land subsidence and sinkhole development. This factor weighs heavily in favor of defendant.

Plaintiffs contend that defendant admits it cannot eliminate the risk of harm with the exercise of reasonable care, although this allegation is not contained in the Petition. Plaintiffs also argue that because the mining wells are not fully identified, the extent of the mining and integrity of the well cavern is unknown so it is impossible to prevent subsidence through the exercise of reasonable care. This allegation is not contained in the Petition, but presumably, plaintiffs maintain that the Court can draw this inference from the factual allegation that many of the wells do not show surface expression. But the Court does not conclude that the allegations, (1) that many of the older wells do not show surface expression, and (2) a sinkhole developed in 2005, are sufficient to create a reasonable inference that it is *impossible* to eliminate the risk of land subsidence and sinkhole development by demolishing the identified home, constructing a fence and maintaining that property. In applying this factor, the Court should consider "the unavoidable risk remaining in the activity, even though the actor has taken all reasonable

precautions in advance and has exercised all reasonable care in his operation, so that he is not negligent."[22] There is no factual allegation in the Petition, if accepted as true, that allows the Court to conclude that this factor is present.

Plaintiffs argue that maintaining abandoned salt solution mining wells cannot be said to be a matter of common usage in the same way that blasting, oil drilling, and manufacturing explosives are not matters of common usage.[23] Defendant argues that the Court should focus on its activity of maintaining abandoned property, rather than abandoned salt mines, a common activity in Kansas. But plaintiffs allege in the Petition that strict liability should be imposed for the activity of maintaining abandoned salt mines. The Court agrees that this is not a matter of common usage and this factor weighs in favor of plaintiffs.

Plaintiffs argue that maintaining the salt mine is inappropriate for its location because the wells are adjacent to and run under more than 300 homes and several public streets. Defendants point out that these allegations are not contained in the Petition and that Careyville was constructed because of and in reaction to the location of the salt mine. Given the minimal factual averments in the Petition, the Court cannot conclude that defendant's maintenance of the salt mines is inappropriate for the location.[24]

Finally, the Court must consider the value of defendant's activity to the Careyville community. Even if the other factors weigh in favor of plaintiff, the activity's "value to the

---

[22]Restatement (Second) of Torts § 520, cmt. c.

[23]*See Anderson v. Farmland Indus.*, 136 F. Supp. 2d 1192, 1200 (D. Kan. 2001) (citing Restatement (Second) of Torts § 520, cmt. i.)

[24]*Cf.* Restatement (Second) of Torts § 520, cmt. j (explaining that some activities, if they have sufficient value to the community, can only be carried out in a particular place, such as coal mining where coal is located, and that "they may not be regarded as abnormally dangerous when the are so located, since the only place where the activity can be carried on must necessarily be regarded as an appropriate one.").

community may be such that the danger will not be regarded as an abnormal one. This is true particularly when the community is largely devoted to the dangerous enterprise and its prosperity largely depends upon it."[25] Plaintiffs contend that since the salt mining activity ceased in 1999, there is no value to the community, as the wells do not employ residents of Careyville, do not inject money into the community or support other businesses. Defendant counters that its maintenance of the abandoned salt mines contributes great value to the Careyville, especially when compared to the alternative—failing to maintain the abandoned mines. The Court agrees, assuming as true the facts alleged in the Petition, that defendant's maintenance of the salt mines includes efforts to contain future risks associated with the abandoned mines by entering into the Agreement with the KDHE and the City of Hutchinson to buy several homes located near the 2005 sinkhole and build a fence in order to prevent future harms associated with land subsidence and sinkhole development.

Weighing all of the factors set forth in § 520, the Court concludes that plaintiffs fail to state a claim for relief that is plausible on its face that defendant's *maintenance* of the abandoned solution mining wells is an abnormally dangerous activity that subjects them to strict liability. Assuming the factual allegations in the Petition as true, the Court cannot conclude that defendant's maintenance of the wells, which includes a plan to purchase several Careyville homes, demolish them, and build a fence around the area, increases the likelihood of land subsidence and sinkhole development that could harm plaintiffs' property and health. "'An activity is not abnormally dangerous simply because it may *possibly* produce injury.'"[26] The

---

[25]Restatement (Second) of Torts § 520, cmt. f.

[26]*Anderson*, 136 F. Supp. 2d at 1201 (quoting *Ludwikoski v. Kurotsu*, 840 F. Supp. 826, 829 (D. Kan. 1993)) (emphasis in original).

Court cannot conclude, based on the allegations in the Petition, that these efforts would not eliminate any serious risk of harm associated with the abandoned salt mines. Moreover, the value to the community in maintaining the abandoned mines, as set forth in defendant's Agreement with the KDHE and City of Hutchinson, constitutes a value to the community that outweighs the fact that this activity is not a matter of common usage. The Court concludes, therefore, that Count II must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Dismiss (Doc. 9) Count II pursuant to Fed. R. Civ. P. 12(b)(6) is **granted**.

**IT IS SO ORDERED**.

Dated: August 4, 2010

                                               S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE