**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT WICHITA**

| | | |
|---|---|---|
| **KENNETH and LINDA BURDETTE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-CV-1083-JAR-KGG** |
| | ) | |
| **VIGINDUSTRIES INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ON PLAINTIFFS' TRESPASS CLAIMS**

Plaintiffs bring this putative class action against defendant Vigindustries Inc. ("Vigindustries") based on its ownership of land containing abandoned salt mines located in Hutchinson, Kansas.  Plaintiffs assert, among other claims, a claim of trespass under Kansas law. Petition (attached as Exhibit A), Count V.  Because plaintiffs cannot set forth evidence establishing an actionable invasion by Vigindustries onto plaintiffs' property, their trespass claims fail as a matter of law, and Vigindustries is entitled to summary judgment on those claims.

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

**A.     Factual Background**

Plaintiffs are residents of the Careyville addition in Hutchinson.  Careyville was a neighborhood built to house employees of the Carey Salt Company, which mined salt on land

adjacent to Careyville, using solution mining.[1]  This mining transpired during most of the last century, but all mining operations adjacent to Careyville had stopped by 1999.

In 2005, a sinkhole developed on the idle land where the old Carey salt mines had been operated.  The property was by then owned by Vigindustries.  Vigindustries successfully stopped the expansion of the sinkhole and then worked with the Kansas Department of Health and Environment ("KDHE") to evaluate the possibility that other sinkholes could develop on the old Carey Salt land.  As a result of its evaluation and testing, Vigindustries determined that increasing the buffer space between the old solution mines and the homes of Careyville would reduce the potential for future sinkholes to affect any dwellings in Careyville.  Vigindustries volunteered, in a plan developed jointly with KDHE and the City of Hutchinson, to offer to purchase more than 30 properties on the edges of Careyville closest to the old mines and remove the structures from those properties.  Vigindustries' offers were accepted by more than 30 property owners.  After acquiring the properties, Vigindustries removed the existing homes.

The plaintiffs did not own any of the properties purchased by Vigindustries.  Instead, these plaintiffs own other properties in Careyville.  They claim that their property values have been diminished because of Vigindustries' purchase of the homes.  Plaintiffs' claims are for negligence, nuisance and trespass.  Only their trespass claims are at issue on this motion.[2]

---

[1]  In solution mining, warm water is injected into the salt vein, located several hundred feet below the surface of the ground.  The injected water dissolves the salt and the resulting brine is pumped to the surface.  Once the water is evaporated, the salt is refined and sold.

[2]  This Court has previously dismissed plaintiffs' claims for inverse condemnation and strict liability based on ultrahazardous activity and limited their claims for negligence and nuisance to activity occurring after January 6, 2000.  Docs. 17, 20.

### B.      Plaintiffs' Trespass Claims

In Kansas, trespass claims have always required proof that a person or some foreign object or substance has entered upon another's land without permission.  All of the plaintiffs concede that Vigindustries has never entered their property without permission.  Only two plaintiffs have even suggested that some foreign matter has entered their land.  But these claims – by Donna Schroeder that she has observed an increased number of skunks and possums on her property since Vigindustries removed the homes on the property it purchased and by Stephanie Brown that rainwater gathers in low spots on her property – are not sufficient to support an allegation that Vigindustries has caused the wildlife or the water to invade their property.  Thus, none of the plaintiffs can support claims for tangible trespass.

Some courts in other jurisdictions have adopted a rule which permits a trespass claim based on an *intangible* invasion of property.  Even if the Kansas Supreme Court were to recognize such a claim, however, plaintiffs cannot support it here.  Only seven of the plaintiffs make any claim of intangible trespass upon their property and their claims of increased light and noise, an altered view, a concern about snowdrifts which might form and unexplained tremors cannot support claims of intangible trespass.  First, they have not suffered an actual invasion of their land and, second, they cannot show that any of these changes have caused substantial damage to their property.

The following chart summarizes which plaintiffs have even tried to provide any support for each of the types of trespass claims.

| Plaintiff | ALLEGATIONS OF TANGIBLE TRESPASS BY VIGINDUSTRIES ITSELF | POTENTIAL ALLEGATIONS OF OTHER TANGIBLE TRESPASS | POTENTIAL ALLEGATIONS OF INTANGIBLE TRESPASS |
|---|---|---|---|
| Kenneth and Linda Burdette | NO | NO | YES |
| Lloyd and Donna Schroeder | NO | YES | YES |
| Robert and Tresia England | NO | NO | YES |
| Danny and Sharon Sidebottom | NO | NO | NO |
| Glen West and James West | NO | NO | NO |
| Stephanie Brown | NO | YES | YES |

In this Memorandum, Vigindustries explains why even those plaintiffs who have testified to facts they may claim amount to a tangible or intangible entry on their land cannot support their claims.

## II.  STATEMENT OF UNCONTROVERTED FACTS

### A.  Vigindustries

1.      In 2004, Vigindustries acquired real property in the southeastern portion of Hutchinson, Kansas.  The land acquired contained a salt solution mining field, where wells were drilled from 1903 through 1998.  Petition (Exh. A), ¶¶ 12, 15, 17.  Mining on the land now owned by Vigindustries ceased in 1999.  *Id.*, ¶ 16.

2.      The residential neighborhood called Careyville is adjacent to the land owned by Vigindustries.  Petition (Exh. A), ¶¶ 13, 17.

3.      In 2005, a sinkhole developed on the land owned by Vigindustries.  Vigindustries conducted testing in the area.  Petition (Exh. A), ¶¶ 19, 20.

4.      Vigindustries agreed with the City of Hutchinson and the KDHE to purchase more than 30 homes in Careyville, in order to increase the buffer between the residential area and the closed solution wells.  Petition (Exh. A), ¶¶ 21, 23.

5.      Vigindustries has now purchased more than 30 parcels of property in Careyville and has removed the homes on those properties.  *See* Petition (Exh. A), ¶ 21; Deposition of Kenneth Burdette ("K. Burdette dep.") (relevant excerpts attached as Exhibit B) at 32/14-33/25; Deposition of Linda Burdette ("L. Burdette dep.") (relevant excerpts attached as Exhibit C) at 57/1-9.

6.      Plaintiffs' Petition alleges, among other things, that Vigindustries "physically invaded" their property "through prior mining activities and the continued failure to properly maintain the wells, and that the alleged invasion "directly and proximately caused damage to their property."  Petition (Exh. A), ¶¶ 66, 67.

**B.      Plaintiffs' Property**

7.      All of the plaintiffs own property in Careyville.  K. Burdette dep. (Exh. B) at 5/19-20, 8/20-21, 13/20-14/9; L. Burdette dep. (Exh. C) at 5/11-12, 6/16-20, 12/10-22, 13/6-11; Deposition of Lloyd Schroeder ("L. Schroeder dep.") (relevant excerpts attached as Exhibit D) at 19/1-13; Deposition of Donna Schroeder ("D. Schroeder dep.") (relevant excerpts attached as Exhibit E) at 16/16-17/5; Deposition of Robert England ("R. England dep.") (relevant excerpts attached as Exhibit F) at 5/22-25, 13/3-22; Deposition of Tresia England ("T. England dep.") (relevant excerpts attached as Exhibit G) at 10/17-22, 11/9-11; Deposition of Danny Sidebottom ("D. Sidebottom dep.") (relevant excerpts attached as Exhibit H) at 5/21-22, 7/10-12, 8/21-9/10; Deposition of Sharon Sidebottom ("S. Sidebottom dep.") (relevant excerpts attached as Exhibit I) at 10/6-8; Deposition of Glen West ("G. West dep.") (relevant excerpts attached as Exhibit J) at

16/9-11; Deposition of James West ("J. West dep.") (relevant excerpts attached as Exhibit K) at 7/5-13; Deposition of Stephanie Brown ("Brown dep.") (relevant excerpts attached as Exhibit L) at 7/15-16, 17/18-18/10.

8.      Kenneth and Linda Burdette own the property at 1625 Carey Boulevard, Hutchinson, Kansas.  K. Burdette dep. (Exh. B) at 5/19-20, 8/20-21; L. Burdette dep. (Exh. C) at 5/11-12, 6/16-20.

9.      Lloyd and Donna Schroeder own the property at 431 William in Hutchinson.  L. Schroeder dep. (Exh. D) at 5/18-25; D. Schroeder dep. (Exh. E) at 5/18-21, 24-25.

10.     Robert and Tresia England own the property at 504 William in Hutchinson.  R. England dep. (Exh. F) at 5/22-23, 6/11-12; T. England dep. (Exh. G) at 5/16-19, 6/10-12.

11.     Danny and Sharon Sidebottom own the property at 320 Liberty in Hutchinson.  D. Sidebottom dep. (Exh. H) at 5/21-22, 7/10-12; S. Sidebottom dep. (Exh. I) at 10/6-10.

12.     Glen West and James West own the property at 422 Charles in Hutchinson.  G. West dep. (Exh. J) at 16/9-13; J. West dep. (Exh. K) at 7/14-16.

13.     Stephanie Brown owns the property at 411 Charles Street, Hutchinson, Kansas.  Brown dep. (Exh. L) at 5/18-20, 7/15-18.

**C.      No Tangible Trespass By Vigindustries Itself**

14.     Plaintiffs know of no occasion that either Vigindustries or anyone who owned the land now owned by Vigindustries or who operated the salt wells on that land ever came onto their property without plaintiffs' permission.  K. Burdette dep. (Exh. B) at 105/24-106/2, 106/8-15, 111/11-14; L. Burdette dep. (Exh. C) at 54/21-24, 55/8-10, 55/15-23, 56/3-6; L. Schroeder dep. (Exh. D) at 36/22-25, 37/7-11, 20-24, 41/15-19; D. Schroeder dep. (Exh. E) at 41/24-42/4, 42/10-13; R. England dep. (Exh. F) at 70/22-71/3, 76/9-12, 17-22, 78/8-13; T. England dep.

(Exh. G) at 50/5-10, 54/14-17, 22-55/1, 58/5-9; D. Sidebottom dep. (Exh. H) at 91/14-17, 19-22, 93/1-4; S. Sidebottom dep. (Exh. I) at 67/5-8, 21-67/4; G. West dep. (Exh. J) at 87/25-88/4, 88/14-17, 100/7-11, 101/3-11, 102/5-12; J. West dep. (Exh. K) at 70/23-71/6, 71/23-72/1; Brown dep. (Exh. L) at 83/1-10, 83/11-15, 83/25-84/2.

      **D.**      **Allegations of Other Tangible Trespass**

      15.      Plaintiffs Kenneth and Linda Burdette, Robert and Tresia England, Danny and Sharon Sidebottom, and Glen West and James West admit that Vigindustries has never caused any tangible foreign matter to come onto their property without their permission.  K. Burdette dep. (Exh. B) at 106/3-6, 106/16-107/4, 111/15-18; L. Burdette dep. (Exh. C) at 55/4-7, 55/11-14; R. England dep. (Exh. F) at 76/13-16; T. England dep. (Exh. G) at 54/18-21; D. Sidebottom dep. (Exh. H) at 91/23-92/11; S. Sidebottom dep. (Exh. I) at 67/9-12, 16-20, 68/5-8; G. West dep. (Exh. J) at 100/12-15, 102/13-16; J. West dep. (Exh. K) at 71/7-12;.  Nor has anyone who ever operated the salt wells or owned the property where the wells are located ever caused any tangible thing to come onto their property without their permission.  L. Burdette dep. (Exh. C) at 55/24-56/2, 56/7-10; R. England dep. (Exh. F) at 77/7-11, 20-25, 78/14-17; T. England dep. (Exh. G) at 55/2-6, 58/10-14; D. Sidebottom dep. (Exh. H) at 91/23-92/11; S. Sidebottom dep. (Exh. I) at 67/9-12, 16-20, 68/5-8; G. West dep. (Exh. J) at 101/12-19; J. West dep. (Exh. K) at 71/7-12, 72/2-5.

           **1.**      **Skunks and possums**

      16.      Plaintiff Donna Schroeder reports that more skunks and possums have ventured onto the property she and her husband own since the houses were removed from the property purchased by Vigindustries.  D. Schroeder dep. (Exh. E) at 42/21-43/5.  She testified that she has seen skunks two or three times a week every week since January 2010.  *Id.* at 44/4-6.  Before

January 2010, she had seen fewer than one skunk once every two or three months.  *Id.* at 44/10-16.  Mrs. Schroeder testified that she has seen between one and three possums two or three times a week every week since January 2010.  *Id.* at 44/17-23.  She saw a possum once every two or three months before January 2010.  *Id.* at 44/10-14.

17.    The possums have never caused any damage to the Schroeders' property.  D. Schroeder dep. (Exh. E) at 44/24-25.  The skunks have never caused any damage other than the smell from spraying the Schroeders' garage twice.  *Id.* at 43/14-20, 45/1-3.

18.    Vigindustries has never caused any other substance or object to come onto the Schroeders' property without their permission.  L. Schroeder dep. (Exh. D) at 37/1-6; D. Schroeder dep. (Exh. E) at 41/20-23.  Nor did anyone who owned the land where the abandoned salt wells are located or anyone who operated the salt wells ever cause any substance or thing to come onto the Schroeders' property without their permission.  L. Schroeder dep. (Exh. D) at 37/12-16, 37/25-38/4; D. Schroeder dep. (Exh. E) at 42/5-17.

### 2.    Standing water

19.    Plaintiff Stephanie Brown claims that her driveway has sunk and that water stands in the low place at the end of the driveway after a rain.  Brown dep. (Exh. L) at 47/12-17, 48/2-8.  This has been going on for five or six years.  *Id.* at 48/9-10.  Ms. Brown also gets water in her basement when it rains.  *Id.* at 50/10-16.

20.    However, neither Vigindustries nor any company which has ever owned the land where the salt wells are located has ever caused any foreign substance to come onto Ms. Brown's property without her permission.  Brown dep. (Exh. L) at 83/16-24, 84/3-6.

### E.      Alleged Intangible Trespass

21.      Plaintiffs Danny and Sharon Sidebottom, Glen West and James West admit that neither Vigindustries nor any former owner of the land where the salt wells are located or any operator of the wells has ever caused anything intangible to come onto their property without their permission.  D. Sidebottom dep. (Exh. H) at 92/13-20, 93/5-15; S. Sidebottom dep. (Exh. I) at 68/12-20; G. West dep. (Exh. J) at 101/20-102/4; J. West dep. (Exh. K) at 71/13-71/22.

#### 1.      Noise

22.      Plaintiffs Kenneth and Linda Burdette and Lloyd and Donna Schroeder report that they have experienced an increase in noise since Vigindustries removed the houses and some trees from the properties it purchased.  K. Burdette dep. (Exh. B) at 107/13-20; L. Burdette dep. (Exh. C) at 56/11-57/21, 76/24-77/5; L. Schroeder dep. (Exh. D) at 63/2-12, 69/7-8; D. Schroeder dep. (Exh. E) at 25/8-15.

23.      Mr. and Mrs. Burdette have heard increased noise from the trains and grain elevator since the demolition of the houses.  K. Burdette dep. (Exh. B) at 107/21-108/1; L. Burdette dep. (Exh. C) at 76/24-77/5.  The Burdettes could always hear the trains and elevator noise in the background, but it used to be more muffled.  K. Burdette dep. (Exh. B) at 108/17-20, 109/12-15; L. Burdette dep. (Exh. C) at 77/18-24, 78/19-21.

24.      Mrs. Burdette heard increased noise from the demolition of houses and the trimming of trees on the property acquired by Vigindustries during the period when Vigindustries was removing the homes.  L. Burdette dep. (Exh. B) at 56/11-23, 57/10-17.  She does not believe that Vigindustries has caused any other noise to come onto her property.  *Id.* at 57/20-21.

25.     Mr. and Mrs. Schroeder have heard more noise from trains on the main line through Hutchinson since the houses were taken out.  L. Schroeder dep. (Exh. D) at 63/2-12, 69/7-8; D. Schroeder dep. (Exh. E) at 25/8-15.  Mr. and Mrs. Schroeder have heard the train noise dimly since they first moved into their house in 1958, but the noise has increased since the trees and houses were removed.  L. Schroeder dep. (Exh. D) at 66/4-19; D. Schroeder dep. (Exh. E) at 6/9-12, 25/12-15.

### 2.     Lights

26.     In addition, Mrs. Schroeder can now see lights from the Hutchinson airport.  She could not see those lights before the houses were removed.  D. Schroeder dep. (Exh. E) at 17/21-18/10.

### 3.     View

27.     Mr. and Mrs. Burdette, Mrs. Schroeder and Stephanie Brown report that the view from their properties has been adversely affected by the removal of the houses.  K. Burdette dep. (Exh. B) at 31/16-32/10, 82/6-14; L. Burdette dep. (Exh. C) at 34/7-35/1; D. Schroeder dep. (Exh. D) at 17/21-18/2, 18/9-10; Brown dep. (Exh. L) at 22/18-23/1.  They report that they can see the grain elevators more clearly than they could before.  L. Burdette dep. (Exh. C) at 34/7-35/1; D. Schroeder dep. (Exh. D) at 17/21-18/2, 18/9-10; Brown dep. (Exh. L) at 22/18-23/1.

28.     The Burdettes also report they can see the salvage operation north of Carey Boulevard more clearly than they could before.  K. Burdette dep. (Exh. B) at 24/9-17, 24/24-27/3, 131/22-132/8; L. Burdette dep. (Exh. C) at 34/7-23.

29.     Ms. Brown also testified she can now see the railroad tracks and the "mess" around them more clearly than she could before.  Brown dep. (Exh. L) at 22/18-23/11.

30.     The Burdettes, Mrs. Schroeder and Ms. Brown also testified that they did not care for the view of the empty lots where the houses and some trees were removed and that they had preferred the view of the homes which used to stand there.  K. Burdette dep. (Exh. B) at 31/16-32/10, 82/6-14; L. Burdette dep. (Exh. C) at 15/11-15, 15/23-16/7, 37/1-3; D. Schroeder dep. (Exh. E) at 24/19-25/3; Brown dep. (Exh. L) at 21/17-22, 22/7-12, 22/21-23/11, 42/14-25.

### 4.     Snowdrifts

31.     Mr. and Mrs. Burdette suspect they will get more snowdrifts across their yard and street because of the lack of a wind break now that the homes north of Carey Boulevard have been removed.  K. Burdette dep. (Exh. B) at 107/21-108/1; L. Burdette dep. (Exh. C) at 15/23-16/7.

### 5.     Tremors

32.     Plaintiff Tresia England reports that, in the year from November 2009 to November 2010, on approximately four occasions, she has felt tremors when she is inside her home.  T. England dep. (Exh. G) at 55/7-15, 56/23-57/22.  Plaintiff Robert England also claims that once or twice he has felt shaking inside his house, but only in approximately October 2010.  R. England dep. (Exh. F) at 61/16-62/6, 62/16-19.

### 6.     No other alleged intangible trespass

33.     Vigindustries has never caused any other intangible thing to come onto the Schroeders' property without their permission.  L. Schroeder dep. (Exh. D) at 38/11-18, 38/24-39/6; D. Schroeder dep. (Exh. E) at 42/19-43/1, 45/20-24.

34.     Vigindustries has never caused any other intangible thing to come onto the Burdettes' property without their permission.  K. Burdette dep. (Exh. B) at 111/6-9; L. Burdette dep. (Exh. C) at 57/22-58/9.

11

35.     Neither Vigindustries nor any owner of that land has ever caused any other intangible thing to come onto Ms. Brown's property without her permission.  Brown dep. (Exh. L) at 84/7-16.

36.     Vigindustries has never caused any other intangible thing to come onto the Englands' property without their permission.  R. England dep. (Exh. F) at 77/14-19, 78/1-4, 78/14-17; T. England dep. (Exh. G) at 57/23-58/4.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The plain language of Rule 56:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  A fact is only material under Rule 56 "if a dispute over it would affect the outcome of the suit."  *Payless Shoesource, Inc. v. Travelers Companies, Inc.*, 569 F. Supp. 2d 1189, 1191 (D. Kan. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), *aff'd*, 585 F.3d 1366 (10th Cir. 2009).  "An issue is only genuine if it 'is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248).  In addressing a motion for summary judgment, the Court "essentially determines if there is a need for trial, or whether the evidence 'is so one-sided that one party must prevail as a matter of law.'"  *Id.* (quoting *Anderson*, 477 U.S. at 251-52).

The party moving for summary judgment "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to

12

judgment as a matter of law." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex*, 477 U.S. at 322-23). If the movant will not bear the burden of persuasion at trial, it need not negate the nonmovant's claim; rather, the movant may establish a prima facie case "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* (citing *Celotex*, 477 U.S. at 325). If the movant meets its initial burden, the nonmovant "may not simply rest upon its pleadings" but must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.'" *Id.* (quoting the earlier version of Fed. R. Civ. P. 56(e)). The party opposing summary judgment, however, may not rely upon conclusory allegations which do not establish a genuine issue of fact under Rule 56. *Bruner*, 506 F.3d at 1025 (quoting *Baker v. Penn Mut. Life Ins. Co.*, 788 F.2d 650, 653 (10th Cir. 1986)).

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Plaintiffs' Trespass Claims Fail under Existing Kansas Law Because Plaintiffs Cannot Demonstrate that Vigindustries Either Entered Plaintiffs' Property Itself or Caused Some Foreign Matter to Enter.

Trespass is an intentional tort under Kansas law. *Williamson v. City of Hays*, 275 Kan. 300, 307, 64 P.3d 364, 370 (2003). To establish a trespass claim, plaintiffs must prove either that Vigindustries itself entered plaintiffs' land without permission or caused some foreign matter to enter upon plaintiffs' land. *Equity Asset Corp. v. B/E Aerospace, Inc.*, 388 F. Supp. 2d 1305, 1310 (D. Kan. 2005) (citing *United Proteins, Inc. v. Farmland Indus., Inc.*, 259 Kan. 725, 729-30, 915 P.2d 80, 83-84 (1996)); *City of Shawnee v. AT&T Corp.*, 910 F. Supp. 1546, 1561 (D. Kan. 1995) (citing *Riddle Quarries v. Thompson*, 177 Kan. 307, 311, 279 P.2d 266, 269 (1955)). Plaintiffs must also prove "that the entry was purposeful or substantially certain to occur" and

"that defendant intended the act which constituted the invasion of plaintiffs' rights." *Equity Asset*, 388 F. Supp. 2d at 1310 (citing *United Proteins*, 259 Kan. at 729-30, 915 P.2d at 83-84).

1. **Plaintiffs do not claim that Vigindustries itself trespassed upon their property.**

Plaintiffs concede that there has been no tangible invasion of their properties by Vigindustries itself.  Indeed, all the plaintiffs admit that they know of no occasion when Vigindustries or anyone who owned the land now owned by Vigindustries or who operated the salt wells on that land ever came onto their property without plaintiffs' permission.  Statement of Uncontroverted Facts ("Facts"), ¶ 14.  Plaintiffs' tangible trespass claims are thus limited to two claims by plaintiffs who testified to an entry onto their property by something other than Vigindustries itself.

2. **Plaintiffs cannot establish sufficient facts to support their claims for other tangible trespass.**

a. **Plaintiffs who have no tangible trespass claims.**

Eight of the 11 plaintiffs admit that neither Vigindustries nor anyone who operated the salt wells or owned the property on which the wells are located has ever caused any object or substance to come onto their property without their permission.  Facts, ¶ 15.  Plaintiffs Kenneth and Linda Burdette, Robert and Tresia England, Danny and Sharon Sidebottom, and Glen and James West have no evidence to support any claim for tangible trespass.  Summary judgment should be granted for Vigindustries on their claims.[3]

b. **Alleged tangible trespass.**

_____

[3] Even though plaintiff Lloyd Schroeder testified that Vigindustries has never caused anything to come onto his property without his permission, L. Schroeder dep. (Exh. D) at 37/1-6, his wife testified to animals which she may claim were caused to come onto their property by Vigindustries' actions. *See* Section 2.b.i., below.  Plaintiff Lloyd Schroeder is thus not included in this list of plaintiffs with no claim for tangible trespass.

Only two of the plaintiffs have testified to any sort of tangible invasion of their property. Plaintiff Donna Schroeder claims that an increased number of skunks and possums have appeared on her property since the removal of the homes purchased by Vigindustries and may claim that constitutes a trespass.  Facts, ¶ 16.  And plaintiff Stephanie Brown may claim that water which stands in the low place at the end of her driveway and collects in her basement after a rain constitutes a trespass.  *Id.*, ¶ 19.  However, as a matter of law, neither of these allegations is sufficient to support a trespass claim.  Vigindustries is entitled to summary judgment on all plaintiffs' claims for tangible trespass.

### i.      Skunks and possums

Even assuming that the presence of skunks and possums may constitute a tangible invasion of plaintiff Donna Schroeder's property, plaintiffs have no evidence that these animals came from the property owned by Vigindustries or that Vigindustries' conduct resulted in their entry on the Schroeders' property.  While "[a] landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property," there is no evidence to show that Vigindustries' actions have caused an increased number of skunks or possums to enter the Schroeders' property.  *See Miller v. Carnation Co.*, 33 Colo. App. 62, 68, 516 P.2d 661, 664 (1973).

In *Miller*, the court found sufficient evidence to support a trespass claim where the defendants' failure to remove chicken manure from their property caused flies to breed, which then invaded the plaintiffs' property and damaged their home.  33 Colo. App. at 67-68, 516 P.2d at 664 (citation omitted).  Because there was evidence in that case that defendants' conduct caused the "breeding and multiplication of flies and that the flies intruded on plaintiffs'

property," plaintiff had set forth sufficient evidence to support a trespass claim. *Id.*, 33 Colo. App. at 68, 516 P.2d at 664.

In contrast, plaintiffs here cannot show that Vigindustries is breeding skunks and possums or causing their multiplication so that they enter plaintiffs' property. Mrs. Schroeder's theory is apparently: (a) that the homes Vigindustries purchased and removed somehow stopped the wildlife from coming across the street and onto the Schroeders' property; and (b) that Vigindustries owed a legal duty to plaintiffs to leave those homes in place in perpetuity (even after Vigindustries had purchased the property on which the homes rested). *See* D. Schroeder dep. (Exh. E) at 42/21-43/1. But plaintiffs cannot show that Vigindustries is somehow sending those animals onto the Schroeders' property (or even that they are originating from Vigindustries' property). Nor does Vigindustries have any duty to keep structures on its own property to block wildlife from the property of others. Accordingly, the alleged increase in the number of skunks and possums on Mrs. Schroeder's property cannot support a trespass claim against Vigindustries. Vigindustries is entitled to summary judgment on Mr. and Mrs. Schroeder's claim for tangible trespass.

### ii.     Standing water

Plaintiff Stephanie Brown's allegations about standing water are not actionable in trespass because Ms. Brown can put forth no evidence that Vigindustries caused the invasion of water onto her property. Importantly, her claim is based on the collection of *rainwater* on her property; it is not premised on water running off of Vigindustries' property to her property. *See* Facts, ¶ 19.

Under Kansas law, the "[a]lteration of the normal flow of water resulting in an unauthorized entry onto the land of another can constitute the tort of trespass." *Jones v. Pedroja*,

90 P.3d 970, 2004 WL 1245625, at *3 (Kan. App. June 4, 2004) (unpublished table opinion)

(citing *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 470-71, 15 P.3d 338, 342-43 (2000)).

However, Ms. Brown has not alleged that Vigindustries has somehow altered the flow of water

from its property onto her property.  Rather, the water about which she complains is water which

collects after rain falls from the sky.  Facts, ¶ 19.  There is no evidence to show that the water

which collects has come from Vigindustries' property or that Vigindustries otherwise has caused

the water to run onto her property.  Therefore, Ms. Brown cannot support her claim for tangible

trespass.  *See Williamson v. City of Hays*, 275 Kan. 300, 308-11, 64 P.3d 364, 370-72 (2003)

(rejecting a trespass claim against a municipality where plaintiffs failed to show that defendants

changed the direction or flow of water onto plaintiffs' property).

**B.   Plaintiffs Cannot Support a Claim for Intangible Trespass, Even If Kansas Were to Recognize Such a Claim, Because They Cannot Demonstrate the Requisite Invasion or that Their Property Was Substantially Damaged As a Result.**

**1.   Kansas courts have not recognized a claim for intangible trespass.**

Under the traditional rules governing trespass claims, a plaintiff is required to prove a

tangible invasion of his property.  *Maddy v. Vulcan Materials Co.*, 737 F. Supp. 1528, 1539 (D.

Kan. 1990) (citations omitted).  Kansas state courts have not recognized a trespass claim based

on *intangible* invasion.  *Id.* at 1540.  However, some courts elsewhere have adopted a rule which

allows a plaintiff to bring a trespass claim based on an intangible invasion of property if the

intangible trespass resulted in substantial damages to the plaintiff's land.  *Maddy*, 737 F. Supp. at

1539-40.

Federal courts applying Kansas law have predicted that, if Kansas courts were to

recognize a claim for intangible trespass, they would adopt the modern rule requiring substantial

damage to the plaintiffs' land as a result of the invasion.  *See*, *e.g.*, *In re WorldCom, Inc.*, 546

F.3d 211, 217-18 (2d Cir. 2008) (predicting that "the Kansas Supreme Court, if it were to recognize intangible trespasses at all, would apply the modern view and would require a plaintiff asserting a claim of intangible trespass to establish that the invasion had caused damage to the *res*."); *Maddy*, 737 F. Supp. at 1541 (applying the modern rule and holding that plaintiffs failed to support a claim for trespass where they did not present proof of actual damage to their property and instead merely alleged a general diminution in the value of their property).  In addition, the Kansas Supreme Court has noted in *dicta* that Kansas would likely require proof of substantial damage in such a case.  *Smith v. Kansas Gas Serv. Co.*, 285 Kan. 33, 47, 169 P.3d 1052, 1061 (2007) (citing *Gross v. Capital Elec. Line Builders, Inc.*, 253 Kan. 798, 801, 861 P.2d 1326, 1329 (1993)).  *See also In re WorldCom*, 546 F.3d at 218 (the Kansas Supreme Court's statement in *Smith* regarding intangible trespass "strongly suggests that Kansas would require plaintiffs asserting [intangible trespass] claims to establish damage to the land.").

Thus, even if the Kansas Supreme Court were to recognize a claim based on intangible trespass, plaintiffs would be required to show substantial damage to their property from the alleged intangible invasion.  *See Maddy*, 737 F. Supp. at 1539 (explaining that unlike the traditional rule, the modern rule does not infer damage as a matter of law, but rather "[t]he plaintiff claiming trespass must prove that the intangible invasion resulted in substantial damages to the plaintiff's land").[4]  The court in *Maddy* also distinguished intangible trespass claims from nuisance claims by explaining:

---

[4] *But see City of Shawnee*, 910 F. Supp. at 1561-62.  The Court in *City of Shawnee* considered whether the statute of limitations barred plaintiffs' claim based on pulses of information sent through cable onto plaintiffs' property. *Id.* at 1561.  In its discussion about the timing of possible continuing trespasses, the Court said, in *dicta*, that "liability attaches 'irrespective of whether harm is thereby caused.'"  *Id.* (citations omitted).  The Court did not analyze whether Kansas would recognize an intangible trespass or whether, if it did, it would require proof of substantial damage to support such a claim.

But in cases of indirect invasion—the 'classic cases of the barking dog, the neighboring bawdy house, noise, smoke, fumes, or obnoxious odors' which cause mere discomfort and annoyance— the plaintiff's remedy is in an action for nuisance based upon an interference with his right to use and enjoy his property.  Only if the indirect and intangible invasion causes substantial damage to the plaintiff's property, thereby infringing his exclusive possessory interest in the property, will an action for trespass lie.

*Id.* at 1540 (quoting *Borland v. Sanders Lead Co.*, 369 So.2d 523, 529-30 (Ala. 1979)).

### a.      Plaintiffs who have no intangible trespass claim

Four of the plaintiffs admit that Vigindustries has never caused anything intangible to come onto their property, and that no one who operated the salt wells or owned the property where the wells are located ever caused anything intangible to come onto their property.  Facts, ¶ 21.  Plaintiffs Danny and Sharon Sidebottom, Glen West and James West thus do not have actionable claims for intangible trespass and summary judgment should be granted for Vigindustries on their claims.

### b.      Alleged intangible trespass

The other plaintiffs have made five additional complaints about conditions that have allegedly occurred because of Vigindustries' removal of the homes on the property it acquired.  These plaintiffs may contend these conditions constitute intangible invasions to their properties.  These allegations are:  (1) an increase in noise since the removal of the homes; (2) the newly visible lights from Hutchinson's municipal airport; (3) a change in the view from their homes; (4) a possibility of increased snowdrifts in their yards; and (5) unexplained tremors.  Facts, ¶¶ 22, 26, 27, 31, 32.  These plaintiffs have not alleged any other intangible invasions to their properties.  *Id.*, ¶¶ 33-36.

Even assuming that plaintiffs may bring claims for intangible trespass under Kansas law, plaintiffs' claims here cannot survive summary judgment for two reasons.  First, these plaintiffs

cannot show that these conditions amount to even intangible invasions of their properties. Second, they cannot establish that these conditions have caused substantial damage to their properties as required under the law governing intangible trespass. *Maddy*, 737 F. Supp. at 1539.

        **i.**      **The conditions about which plaintiffs complain do not amount to intangible invasions.**

The conditions about which plaintiffs complain do not amount to actionable invasions of property, either tangible or intangible, and therefore, they cannot provide support for a trespass claim. *See, e.g., Winkel v. Miller*, 288 Kan. 455, 457, 205 P.3d 688, 691 (2009) (noting that the Kansas Court of Appeals had held that plaintiff had failed to support a trespass claim with any evidence of a direct or intangible invasion of his property by either pollutants or dust). *See also Born v. Exxon Corp.*, 388 So.2d 933, 934 (Ala. 1980) (light from a flare stack that caused plaintiff's whole house to be illuminated was not an entry upon land to support a trespass claim). Vigindustries has found no Kansas case finding that light, noise or an altered view can support a trespass claim.

The complaints plaintiffs make do not amount to any actual invasion of their property, even an intangible one. Unlike most cases involving an alleged entitlement to views or light or air, plaintiffs here are not claiming that structures erected by Vigindustries *block* their views, light or air.[5] To the contrary, they claim that Vigindustries' *removal* of houses and trees has

---

     [5]  Generally, courts have found that landowners have no right to light, air and views over adjoining property. *See, e.g., Mira Mar Mobile Community v. City of Oceanside*, 119 Cal. App. 4th 477, 492, 14 Cal. Rptr. 3d 308, 317 (2004) (California landowners have no right of access to air, light and view over adjoining property); *Cash v. Cincinnati Bd. of Zoning Appeals*, 117 Ohio App. 3d 319, 325, 690 N.E.2d 593, 596 (1996) (landowner cannot acquire prescriptive right to use of light and air over property of another); *Stewart v. Secor Realty & Investment Corp.*, 667 So.2d 52, 54-55 (Ala. 1995) (property owners have no legal entitlement to view across another's property). *See also Lapere v. Luckey*, 23 Kan. 534, *3 (1880) (rejecting English doctrine of "ancient lights," which would have given landowner a legal right to the free flow of light across the adjoining land).

changed the views, light, noise and blowing snow which come or may come onto their own property. Plaintiffs cannot credibly contend that they had some right to their existing views or a right to require Vigindustries to preserve structures on land it owns so as to block light, noise and wind from coming onto plaintiffs' land. But this is what plaintiffs must claim, and they must claim that their right trumps Vigindustries' own property right to remove structures and trees on land it purchased. Plaintiffs have no such superior right. *See, e.g.*, *Western Sunview Properties, LLC v. Federman*, 338 F. Supp. 2d 1106, 1117 (D. Haw. 2004) (granting summary judgment for defendant on nuisance claim that new pool disturbed plaintiff's view because court cannot permit plaintiffs to "exercise personal veto power over their neighbor's aesthetic choices"); *Mohr v. Midas Realty Corp.*, 431 N.W.2d 380, 382-83 (Iowa 1988) (affirming summary judgment for defendant on nuisance claim because "extending the law of nuisance to encompass obstruction of view caused by lawful construction of a neighboring building would unduly restrict a landowner's right to the free use of property").

Nor do the unexplained tremors claimed by the Englands amount to even an intangible trespass. The Englands do not claim that the entry of anything, tangible or intangible, onto their land is causing the alleged tremors.[6] Under Kansas law, trespass requires *an entry* on land owned by another. *Equity Asset*, 388 F. Supp. 2d at 1310 (citation omitted); *Riddle Quarries*, 177 Kan. at 311, 279 P.2d at 269. Although courts in other jurisdictions have mentioned the possibility that tremors, in conjunction with the entry of pollutants or dust, might support an intangible trespass claim, nothing in Kansas law suggests that Kansas would weaken the

---

[6] In fact, it is difficult to imagine what activity of Vigindustries could possibly have caused the alleged tremors, which are claimed to have occurred only since November 2009. *See* R. England dep. (Exh. F) at 61/23-62/6; T. England dep. (Exh. G) at 55/16-19. Neither the buyout nor the removal of homes on the properties Vigindustries bought could cause tremors.

elements of trespass by removing the requirement of an entry onto land.  *See*, *e.g.*, *Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta*, 938 F. Supp. 829, 835-36 (N.D. Ga. 1995) (dismissing trespass claim based on noise, dust, exhaust and vibrations as barred by the statute of limitations, but finding it unnecessary to determine whether claim was properly brought in trespass or nuisance because limitations analysis was the same); *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 67, 602 N.W.2d 215, 222-23 (1999) (concluding that Michigan would not recognize claim of intangible trespass based on dust, noise and vibrations because such a claim sounds in nuisance).  *See also In re WorldCom*, 546 F.3d at 219 n. 5 (applying Kansas law) (quoting *Prosser & Keeton on Torts*, § 13 at 70 (5th ed. 1984) ("Thus, it is not a trespass to project light, noise, or vibrations across or onto the land of another.")).

> ii.     **Even if plaintiffs could show intangible invasions, they cannot establish that such invasions resulted in substantial damage to their property.**

Plaintiffs' intangible trespass claims also fail because they cannot establish "substantial damage" to their properties as a result of the conditions about which they complain.  Plaintiffs cannot identify any substantial damage to their properties that has been caused by the alleged light, noise, alteration of view, snowdrifts or tremors, and therefore, these claims are not actionable in trespass.  *See In re WorldCom*, 546 F.3d at 219 (light pulses transmitted through fiber optic cables on plaintiff's land were not actionable in trespass where plaintiff failed to allege that the invasion caused substantial damage to his property); *Maddy*, 737 F. Supp. at 1541 (plaintiffs failed to support a claim for trespass based on intangible invasion of airborne gases where they failed to present proof of actual damage to their property and instead alleged only a general diminution in the value of their property); *Bradley v. American Smelting & Refining Co.*, 635 F. Supp. 1154, 1157 (W.D. Wash. 1986) (granting summary judgment for defendant on

plaintiffs' trespass claim where plaintiffs were unable to show that the presence of arsenic and cadmium on their land was harmful or that it constituted an injury to their property); *Wilson v. Interlake Steel Co.*, 32 Cal.3d 229, 232, 649 P.2d 922, 924, 185 Cal. Rptr. 280, 282 (1982) ("Noise alone, without damage to the property, will not support a tort action for trespass.").

Because plaintiffs cannot present evidence to demonstrate that their property has been substantially damaged by these alleged invasions, any claim based on intangible trespass fails, entitling Vigindustries to summary judgment as a matter of law on their trespass claims.

## V.    CONCLUSION

Vigindustries is entitled to summary judgment against Danny and Sharon Sidebottom, Glen West and James West, who claim no tangible or intangible trespass.  Vigindustries is also entitled to summary judgment against Lloyd and Donna Schroeder and Stephanie Brown on their tangible trespass claims because increased wildlife and collected rainwater do not constitute a tangible invasion of their property.  Finally, Vigindustries is entitled to summary judgment against Kenneth and Linda Burdette, Lloyd and Donna Schroeder, Robert and Tresia England and Stephanie Brown on their claims of intangible trespass because the conditions about which they complain do not amount to an actionable intangible trespass.

For the reasons set forth above, defendant Vigindustries Inc. respectfully requests that the Court grant its motion for partial summary judgment, and dismiss Count V, which sets forth plaintiffs' trespass claims, in its entirety.

STINSON MORRISON HECKER LLP

By:   s/  Heather S. Woodson
      Daniel D. Crabtree, KS Bar # 10903
      Heather S. Woodson, KS Bar # 13513
      Anne C. Emert, KS Bar # 22144
      1201 Walnut, Suite 2900
      Kansas City, Missouri 64106
      Telephone:  (816) 842-8600
      Facsimile:  (913) 451-6352
      dcrabtree@stinson.com
      hwoodson@stinson.com
      aemert@stinson.com

ATTORNEYS FOR DEFENDANT
VIGINDUSTRIES INC.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of March, 2011, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following persons:

Matthew L. Bretz
Mitchell W. Rice
Melinda G. Young
Bretz Law Offices, LLC
1227 North Main Street
P.O. Box 1782
Hutchinson, Kansas 67504-1782
mbretz@bretzpilaw.com
mitch@bretzpilaw.com
melinda@bretzpilaw.com

and

Stanley R. Juhnke
Juhnke Law Offices
400 West First Street
Hutchinson, Kansas 67501-5206
mail@juhnkelaw.com

ATTORNEYS FOR PLAINTIFFS.

                              s/  Heather S. Woodson
                              Attorney for Defendant Vigindustries Inc.

24