**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT WICHITA**

| | | |
|---|---|---|
| KENNETH and LINDA BURDETTE,<br>LLOYD and DONNA SCHROEDER,<br>ROBERT and TRESIA ENGLAND,<br>DANNY and SHARON SIDEBOTTOM,<br>GLEN WEST and JAMES WEST, and<br>STEPHANIE BROWN,<br>individually and as representatives of a class of<br>real property owners described below,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>VIGINDUSTRIES INC.,<br>　　　　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 10-CV-1083-JAR-DWB |

**MEMORANDUM OF LAW AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

　　　　Plaintiffs, by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 23, respectfully request the Court enter an Order certifying the class defined herein. Plaintiffs submit the legal authorities and argument herein, in support of their Motion.

**INTRODUCTION**

　　　　This is a class action lawsuit brought to compensate residential property owners in the Careyville subdivision in Hutchinson, Kansas for damages caused by the Defendant. Defendant owns an abandoned salt mine in Careyville and Defendant's negligence has caused subsidence and sinkholes, the affect of which was realized on Careyville residential properties when Defendant announced in August 2009 that testing revealed many of the salt mine wells and caverns were at risk for collapse and posed a threat to public safety. At the same time, Defendant announced that it intended to purchase and demolish 37 homes in Careyville that had been identified as those homes

in the most immediate danger.

As of August 2009 and continuing, the residential property owners of Careyville have suffered permanent injury to their homes and property, diminution in the market value of their homes and property, loss of the full use of their homes and property, deprivation of the peaceful use and enjoyment of their homes and property, inconvenience, discomfort, annoyance, and present and prospective injuries to their health, and other consequential, incidental and special damages.   The representative Plaintiffs have brought this lawsuit against Defendant under claims of negligence, nuisance and trespass.

Plaintiffs expert witness, Robert A. Simons, Ph.D., has opined that the proposed class members in this case are commonly affected by actual subsidence, potential subsidence, or proximity to bought-out residential property related to the Defendant's property. (See Exhibit A, Supplemental Expert Report of Robert A. Simons, Ph.D., p. 3, para. 12.)  At this stage of the proceedings and prior to discovery on the merits, Dr. Simons states:

> In my opinion, for the purposes of class certification, the combination of sinkhole development on Defendant's property, subsidence-related damage to residential properties in many portions of the Careyville neighborhood, and Defendant's purchase and subsequent demolition of 37 Careyville homes as part of its response to concerns relating to the potential for future subsidence of abandoned mines on its property proximate to Careyville, have, to a reasonable degree of scientific certainty, adversely affected and will continue to adversely affect real estate valuees of residential properties in the Careyville neighborhood of Hutchinson, Kansas.  Well-accepted formulaic methodologies exist for quantifying the impact of such subsidence-related damages, conditions and concerns on classes of property owners within a defined geographic area.  These property owners are commonly affected by the subsidence issues, and it is my opinion that their losses, in percentage of property value, are consistent when knowledge of the subsidence issues is known.
> . . .
> I opine, to a reasonable degree of scientific certainty, that residential class Plaintiffs in this case face common issues stemming from mine subsidence on Defendant's property, from Defendant's subsequent buyout and demolition of residences along

the northern and eastern perimeter of Careyville, and from subsidence-related damage
observed at residences throughout the Careyville neighborhood, and that generally
accepted and formulaic methods and data exist to carry out this analysis for this
proposed class action case.

(Ex. A, pg. 35, para 125 & 126.)

With this Motion, Plaintiffs seek certification of a plaintiff class of all similarly situated

residential property owners as of August 2009. Certification will allow the enforcement of the class

members' rights without the burden and expense of joining all members of the class, a task which

would be, for all practical purposes, impossible and destructive of any right of recovery. Because

the claims of the members of the putative class are, for the most part, too small to warrant individual

lawsuits, certification will eliminate the unfair advantage created by the disparate wealth of the

parties and, as contemplated by class action litigation and the statutory and case law creating and

suggesting it, provide for the redress of wrongs that may otherwise go uncompensated.

## FACTUAL BACKGROUND

As alleged in Plaintiffs' Petition, this litigation concerns damages caused by subsidence and

sinkhole development and the buyout of only 37 of the more than 300 residential properties in the

Careyville subdivision of Hutchinson, Kansas. Careyville is located in the southeastern portion of

the City of Hutchinson, Kansas. The Careyville addition is a residential neighborhood consisting

of more than 300 residences that were built adjacent to the former Carey Salt Company solution

mining plant. The solution mining well field, located on the north and east perimeter of the

residential neighborhood, includes 121 solution mining wells over approximately 200 acres. The

wells were drilled in the period from 1903 through 1998, and their depths range from approximately

600 feet to 755 feet below ground surface. Many of the wells show a casing at the ground surface,

but for many of the older wells, there is no surface expression.  The solution mining operation was shut down and discontinued in 1999.

Defendant acquired ownership of the abandoned salt mine in 2004, thereby becoming liable for all damages caused by the Carey Salt Company and it successors in interest.  Moreover, after acquiring ownership of the abandoned salt mine, Defendant failed to repair and/or maintain the salt mining wells and caverns, and thereby prevent land subsidence and sinkhole development.

A large sinkhole developed in Careyville in 2005.  As a result of the sinkhole and substantial land subsidence, the Kansas Department of Health and Environment required Defendant to conduct testing to determine the integrity of some of the salt mining wells.  As a result of the testing conducted, Defendant announced in August of 2009 that many of the salt mine wells were at risk of further subsidence and sinkhole development, and accordingly, it planned to acquire and remove homes on the north and east perimeter of Careyville.  Defendant also indicated that once the homes were acquired and removed, it would construct a fence around the acquired property and maintain the property in a "park-like setting."

The City of Hutchinson entered into an agreement with Defendant that if the identified homeowners did not accept an offer to purchase from Defendant, the City of Hutchinson would take the properties by its power of imminent domain.  A total of 37 homes have now been purchased and demolished by Defendant.

As a result of Defendant's actions, the owners of the 271 residences that remain in Careyville have suffered permanent injury to their homes and property, diminution in the market value of their homes and property, loss of the full use of their homes and property, deprivation of the peaceful use and enjoyment of their homes and property, inconvenience, discomfort, annoyance, and present and

prospective injuries to their health, and other consequential, incidental and special damages. Accordingly, the representative Plaintiffs sue for negligence, nuisance and trespass.

## ARGUMENT

### A.    Applicable Standards

Class actions are governed by Federal Rule of Civil Procedure 23.  Application of the federal rule in other jurisdictions is persuasive authority.  *See Brueck v. Krings*, 6 Kan. App. 2d 622, 631 P.2d 1233, 1235 (1981); *Steele v. Security Benefit Life Ins., Co.*, 226 Kan. 631, 636, 602 P.2d 1305 (1979).

Courts have consistently held that Rule 23 should be liberally construed in favor of class certification.  *Gray v. Amoco Prod. Co.*, 1 Kan. App. 2d 338, 564 P.2d 579, 586 (1977), *rev'd on interest computation*, 223 Kan. 441, 573 P.2d 1080 (1978).  Moreover, the substantive allegations of the pleadings are accepted as true for purposes of determining class certification, and the analysis under Rule 23 should not assess the underlying merits of Plaintiffs' cause of action.  In *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2nd Cir. 1978), the court stated:

> As to the appellants argument that the trial court should not have decided the class motion on the basis of the complaint, we simply note that Judge Frankel was prohibited from conducting an inquiry into the merits by the Supreme Court's decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) . . . and that we have previously held that it is proper to accept the complaint allegations as true in a class certification motion.

*See also, In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1033 (N.D. Miss. 1993); *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 547 (S.D. N.Y. 1995).

Because class actions play an important role in the private enforcement of the laws, courts generally resolve any doubts in favor of certifying the class.  *Adames v. The Mitsubishi Bank, Ltd.*,

133 F.R.D. 82, 88 (E.D.N.Y. 1989); *German v. Fed. Loan Home Mortgage*, 885 F. Supp. 537, 547 (S.D.N.Y 1995) (*citing Korn v. Franchard Corp.*, 456 F.2d 1206, 1208-09 (2nd Cir. 1972)).  "[I]f there is to be an error made, let it be made in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2nd Cir. 1968), *cert. denied*, 395 U.S. 977 (1969) *(quoting Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968), *cert. denied* 394 U.S. 928 (1969)). As shown below, this action meets all the requirements of Rule 23.

A preliminary step in addressing class certification is to determine whether there is an identifiable class.  *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982).  To that end, a class exists where the general outlines of the membership of the class can be determined.  7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1760, p. 118 (1986).

Here, the class is quite easy to recognize and identify.  The Careyville neighborhood is a self-contained residential community, separated from the rest of Hutchinson by the salt mines and railroad tracks to its north and east and by larger rural parcels to the south. Because of the self-contained nature of the neighborhood, the residential properties in the Careyville neighborhood are easily identified.

Plaintiffs propose two subclasses within those residences in Careyville based on proximity to the salt mine and the 37 homes bought and demolished by Defendant.  All 37 homes bought by Defendant were located on either William Street or Carey Boulevard.  Defendant, however, purchased only select homes on each street, leaving a small number of homes on the end of each street.  For example, William Street used to have a total of 27 homes along the east side of the street. After Defendant's buyout of 22 of those homes, only five homes remain on the east side of William

street.  The homes that are either adjacent to or on the same block as a now demolished home and

vacant lot are the most severely impacted homes in the class and therefore, their damages are slightly

greater than the rest of the class.  Plaintiffs propose the following class definitions:

> **Subclass A**: All similarly situated owners of real property located in the Careyville
> neighborhood of Hutchinson, Reno County, Kansas, either adjacent to properties
> bought by Defendant VigIndustries Inc. or on the same block as said adjacent
> properties, whose real property has sustained economic damages due to subsidence
> issues emanating from Defendant's property; and

> **Subclass B**: All similarly situated owners of real property located in the Careyville
> neighborhood of Hutchinson, Reno County, Kansas, not adjacent to properties bought
> by Defendant VigIndustries Inc. and not on the same block as said adjacent
> properties, whose real property has sustained economic damages due to subsidence
> issues emanating from Defendant's property.

The class definition is appropriately clear and readily understandable.

### B.     The Elements - (1) Numerosity, (2) Commonality, (3) Typicality and (4) Adequacy of Representation - Are Satisfied.

The determination of whether a case should be certified as a class action under Rule 23 is

a five-part inquiry.  The Court first decides whether the following four elements are satisfied: (1)

numerosity, (2) commonality, (3) typicality and (4) adequacy of representation.  Along with these

four elements, the Court must also find that common issues predominate over questions affecting

only individual members, and that the maintenance of a class action is superior to other available

methods of adjudication in promoting the convenient administration of justice.  *See* Fed. R. Civ.

P. 23 (b)(3).  When presented with motions for class certification, the United States District

Court for the District of Kansas has consistently granted the motion when the elements of Rule

23 are satisfied.  *See generally, Sibley v. Sprint Nextel Corp*., 254 F.R.D. 662 (D. Kan. 2008); *In

re Urethane Antitrust Litigation*, 237 F.R.D. 440 (D. Kan. 2006).

7

### 1. The Class is Numerous and Joinder of All Class Members is Impractical.

It is estimated that the Class totals 271 members - 54 in Subclass A and 217 in Subclass B. There is no set formula for determining whether the numerosity requirement is met. *Newberg on Class Actions* §§ 3.03-.05, at 3-21-22 (referencing one court that found 40 members enough to satisfy the numerosity requirement, while another court found 13 members sufficient); *see also Rodriguez by Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1013 (W.D. Mich. 1987) ("There is no magic number of class members required to meet the numerosity test."); *Newberg on Class Actions* §3.05 ("A presumption arises that over 40 plaintiffs cannot be practically joined."). Common sense dictates that here, the joinder of all putative class members is impracticable and the numerosity requirement is satisfied.

### 2. There Are Questions of Law and Fact Common to the Class.

Commonality refers to whether there are common issues, the resolution of which will advance the litigation. *Zine v. Chrysler Corp.*, 600 N.W.2d 384 (Mich. Ct. App. 1999). This requirement focuses on the plaintiffs' claims and is not difficult to satisfy. Indeed, the rule requires only that there be questions of law or fact common to the class. *Schreiber v. Nat'l Collegiate Athletic Ass'n*, 167 F.R.D. 169, 174 (D. Kan. 1996). Thus, commonality does not require that all issues in the litigation be common ones, but only that common questions exist. *See Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir. 1982); *In re Asbestos School Litig,*, 104 F.R.D. 422, 429 (D. Pa. 1984). This case, by its nature, deals with issues common to all residential property owners in the class area. In this case, there are many common issues appropriate for class treatment. They include, but are not limited to:

(a)     Whether Defendant properly supported the land adjacent to the salt mine;

(b)     Whether Defendant properly maintained its abandoned salt mine;

(c)     Whether Defendant properly detected, prevented, stopped or remedied land subsidence and sinkhole development;

(d)     Whether Defendant created and maintained a dangerous condition;

(e)     Whether Defendant interfered with the residential property owners' use and enjoyment of their property;

(f)     Whether Defendant physically invaded Plaintiffs' property through prior mining activities and the continued failure to properly maintain the wells;

(g)     Whether land subsidence caused structural damage to property in Careyville; and

(h)     Whether Defendant is liable for compensatory damages on theories of negligence, nuisance, and trespass.

Although additional issues could be presented, the common issues identified above are the most significant part of the class claims against the Defendant and these issues are best resolved in a single class action. *See In re Asbestos School Litig.*, 104 F.R.D. at 431 (*citing 7A Federal Practice and Procedure* § 1778, p.53 (1972)).  "Although members of the proposed class in this instance may possess different avenues of redress, their claims stem from the same source: [here, in the case at bar, defendants' negligent actions.] Thus, the proposed class shares sufficient factual commonality to satisfy the minimal requirements of Rule 23(a)(2)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

### 3.     *Plaintiffs' Claims Are Typical of the Claims of the Class.*

The typicality requirement directs the Court to focus on whether the named representatives possess the same interests and suffer the same injuries as the proposed class members. *See In re*

*Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995).  This requirement does not mandate, however, that the claims of the representative plaintiffs be identical to those of the other class members.  *Id.; see also Edgington v. R.G. Dickinson and Co.*, 139 F.R.D. 183, 189 (D. Kan. 1991) ("The representative's claim may differ factually and still be typical of the class if it arises from the same events or course of conduct and shares the same legal or remedial theory.").  Rather, it merely requires that the claims of the representative plaintiffs not be "significantly antagonistic" to the claims of the proposed class.  *See id.*  As one court has held:

> Typicality . . . means that there are other members of the class who have the same or similar grievances as the plaintiff.  The burden is fairly and easily met so long as other class members have claims similar to the named plaintiff.  Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

In the instant case, the class representatives' claims are typical of those of the class.  Indeed the claims of all the class members arise from the conduct of the Defendant.  All rely on the same theories of liability against Defendant.  Further, the evidence and testimony used to show Defendant is liable for damage to the class representatives' property will be the same for every claim.  The class representatives' claims are clearly typical of those of the putative class.  Subclass A members Kenneth and Linda Burdette, Lloyd and Donna Schroeder, and Robert and Tresia England are residential property owners in Careyville and their homes are adjacent to or on the same block as homes that were bought and demolished by Defendant.  The Subclass A members have suffered damages as a result of Defendant's actions, including but not limited to a 55% loss in property value. (Ex. A, pg. 4, para. 13.)  The loss in property value suffered by the named Subclass A members is

typical if not identical to the loss to all members of Subclass A. Subclass B members, Danny and Sharon Sidebottom, Glen West and James West, and Stephanie Brown are residential property owners in Careyville, but their homes are not adjacent to or on the same block as home that were bought and demolished by Defendant. The Subclass B members have also suffered damages as a result of Defendant's actions, including but not limited to a 50% loss in property value. (Ex. A, pg. 4, para. 13.) The loss in property value suffered by the named Subclass B members is typical if not identical to the loss of all members of Subclass B. Furthermore, the cause of the damage to named Plaintiffs' properties in Careyville will be the same as the cause of damage to the rest of the class. The Rule 23 typicality requirement is satisfied in this case.

###               4.      *Plaintiff Will Fairly and Adequately Represent the Class.*

The focus of the adequacy of representation requirement goes to whether the class representatives (1) have common interests with the members of the class, and (2) will vigorously prosecute the interest of the class through qualified counsel. *See Newberg on Class Actions* § 3.22; *Law v. Nat'l Collegiate Athletic Ass'n.*, 167 F.R.D. 178, 183 (D. Kan. 1996); *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 679 (D. Kan. 1991). If the representative plaintiffs have common interests, they are more likely to be able to adequately represent the Class.

The named Plaintiffs certainly have common and unified interests with the members of the class. All class representatives live and own homes in Careyville and seek the same redress as the members of the class. All class members will be required to prove whether Defendant failed to properly support the land adjacent to the salt mine, failed to properly maintain the abandoned salt mine, failed to properly detect, prevent, stop or remedy land subsidence and sinkhole development, created and maintained a dangerous condition, interfered with the use and enjoyment of the

residential property owners' use of their property, physically invaded Plaintiffs' property through prior mining activities and the continued failure to properly maintain the wells, whether land subsidence caused structural damage to property in Careyville, and whether Defendant is liable for compensatory damages on theories of negligence, nuisance, and trespass.

The class representatives equally share the burden of proving their claims against Defendant. The Plaintiffs' legal theories of liability are the same for all class members and proof of Plaintiffs' causes of action will come from Defendant's actions - not Plaintiffs' actions.

Additionally, the class representatives will vigorously prosecute the interests of the class through qualified counsel and have chosen experienced counsel to prosecute this claim. *See In re Teletronics Pacing Sys., Inc*., 172 F.R.D. 271, 282-3 (D. Ohio 1997). Plaintiffs' counsel have extensive experience managing complex litigation and are qualified to pursue this action zealously.

Bretz Law Offices has previously handled and continues to handle complex litigation cases through the entire process of a case, including trial and appeal. Matthew L. Bretz began handling complex litigation in 1991 while practicing law in California. His practice in California included, among other things, aviation, wrongful death, toxic tort, and class action matters. Over the last twenty years he has handled personal injury, wrongful death, aviation, medical malpractice, nursing home negligence and product liability claims in Kansas, Colorado, Oklahoma, Nebraska, Iowa, South Dakota, Missouri, Idaho, California, Florida, Texas, Nevada, the Philippines, and Mexico. Mr. Bretz is admitted to practice before the Tenth Circuit Court of Appeals, the United States District Courts for the Districts of Kansas, Nebraska, Colorado, and the Central District of California, and the Supreme Courts of California and Kansas.

Stanley R. Juhnke has also previously handled and presently addresses complex litigation

matters.  In particular, Mr. Juhnke represented a group of plaintiffs in the class action case *Smith v. Kansas Gas Service Co.*, Reno County Case No. 01 C 29, which involved claims for damages to property caused by the 2001 gas explosions in Hutchinson, Kansas.  Mr. Juhnke also previously represented a group of plaintiffs in a class action claim arising out of damages to property caused by a widespread fire in Rice County, Kansas.

The representative Plaintiffs will fairly and adequately represent the class.  Plaintiffs have identical interests with the members of the class, and Plaintiffs will vigorously prosecute the interests of the class through qualified counsel.

C. **Common Issues Predominate over Questions Affecting Only Individual Members of the Class**.

Federal Rule of Civil Procedure 23(b)(3) requires that common questions of law or fact must predominate.  This part of Rule 23 is couched in the disjunctive: common questions of fact or law. It does not, therefore, require the presence of both a common question of fact and a common question of law.  The commonality requirement has been aptly characterized as a " 'low hurdle' easily surmounted." *McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (internal quotations and citations omitted).  To that end, Plaintiffs need only show that there is "at least one question of law or fact common to the class . . . ." *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991). Indeed, the predominance requirement is met if there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication.  *Heartland Commc'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 117 (D. Kan. 1995).

Tests for ascertaining predominance determine whether resolution of the common issues

"will materially advance a disposition of the litigation as a whole," or whether the common issues "constitute a significant part of the individual cases." *See In re Tetracycline Cases*, 107 F.R.D. 719, 727 (D. Mo. 1985); *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 473 (5th Cir. 1986). "The district court must engage in a qualitative rather than quantitative analysis to ascertain whether the predominance requirement has been satisfied." *See Newberg on Class Actions* § 4.25. In determining whether common questions of law or fact predominate, liability issues are the primary focus. *Cumberland Farms, Inc. Browning-Ferris Indus., Inc.*, 120 F.R.D. 642, 647 (E.D. Pa.); *In re Chlorine and Caustic Soda Antitrust Litig.*, 116 F.R.D. 622, 627 (E.D. Pa. 1987). Individual questions, such as the calculation of damages, do not defeat class action treatment. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *Donaldson v. Pillsbury Co.*, 554 F.2d 525, 834 (8th Cir. 1977). In his treatise, Professor Newberg explains "predominance":

> Most courts have agreed on what the predominance test does not entail: The test was not meant to require that the common issues will be dispositive of the controversy or even be determinative of the liability issues involved. The very definition of the requirement of predominance of common questions contemplates that individual issues will usually remain after the common issues are adjudicated. Under modern class action jurisprudence, the traditional individual issues may also be amenable to suggested common proofs under applicable rules of evidence.

*Newberg on Class Actions* § 4.25, at 4-82-83; *see also, e.g., In re Aluminum*, 160 F.R.D. at 615 (D. Kan. 1995) (*citing In re Catfish*, 826 F. Supp. 1019, 1036-37 (N.D. Miss. 1993)).

The common issues are clearly predominant when the court and the jury will focus on the defendant's actions - not the plaintiffs' actions. *In re Playmobile Antitrust Litig.*, 35 F. Supp. 2d 231, 245 (E.D.N.Y. 1998). The impact of defendant's wrongful conduct can be demonstrated on a classwide basis. After resolution of the common issues, all that will be required is to calculate individual damages. As one court has opined:

14

> Indeed, the common questions . . . not only predominate but overwhelm individualized issues.  If these claims were tried separate, the amount of repetition would be manifestly unjustified.  To the extent that each claim of each plaintiff depends upon proof concerning the history of the operations [of the company] . . . that proof would be virtually identical in each case.  It would be neither efficient nor fair to anyone, including defendants, to force multiple trials to hear the same issues.  Clearly, a Rule 23(b)(3) class could properly be certified under these circumstances.

*Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 67 (D. Ohio 1992); *see also Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1196-97 (6th Cir. 1988).

The issues are the same for all class members in this suit.  The overriding common issue of law or fact - the liability of Defendant for subsidence and the resulting buyout of some of the homes in Careyville - alone is sufficient to certify the class.  Indeed, the liability and damage law, particularly the jury instructions, would be the same in every individual case by a class member.  The liability facts to be proven by each class member would also be common.  Even the methods of appraising the real estate would be the same in individual cases as for the class as a whole.  Thus, the majority of the case is not just common, but virtually identical, for class members.  Clearly, the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) is satisfied here.

**D.**    **Classwide Treatment is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Litigation.**

A class action must be superior to other forms available for fair and efficient adjudication.  "[N]umerous . . . courts have recognized the increasingly insistent need for a more efficient method of disposing of a large number of lawsuits arising out of a single . . . course of conduct . . . [when] the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next." *Sterling*, 855 F.2d at 1197.  Federal Rule of Civil Procedure 23(b)(3) requires that a class action be superior to other available methods of claim resolution.

15

Matters pertinent to determining whether a class action is superior method for adjudicating the claims of the plaintiffs include: whether the maintenance of individual suits would create incompatible standards of conduct for the defendants whether such decisions would affect or impair the interests of the class members; whether final equitable or declaratory relief is appropriate; whether the action is manageable as a class action; whether the claims are complex or the claims too small to warrant individual lawsuits; whether the plaintiffs' recoveries in individual lawsuits would justify the expense of a class action; and whether the class members have interest in controlling their own actions.  *See* Fed. R. Civ. P. 23(b).

Here, the class action is brought under state common law.  This class action is the best means available to the class members to obtain a remedy from the Defendant.  *See Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 529 (M.D. Ala. 1992) (*quoting Greenshaw v. Lubbock County Bev. Ass'n.*, 721 F. 2d 1019, 1024 (5th Cir. 1983)) ("The class action device is an enforcing mechanism for congressionally sanctioned goals.").  The class members' claims are too small to warrant individual suits.  The anticipated economic loss to each individual Careyville class member is substantially outweighed by the anticipated costs of individual litigation.  Indeed, "[i]n actions such as this, . . . the cost of litigation makes separate prosecution of individual claims economically unfeasible." *Schreiber*, 167 F.R.D. at 173 (D. Kan. 1996) (*citing Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262, 266, 92 S. Ct. 885, 891, 893, 31 L. Ed. 2d 184 (1972)) ("Such cases are thus particularly appropriate for class action treatment.").

The alternatives of joinder or intervention do not offer the simplicity and conclusiveness of going forward as a class action.  *See Ouellette v. Int'l Paper Co.*, 86 F.R.D. 476, 483 (D. Vt. 1980).  Indeed, absent certification of the class, Plaintiffs' counsel is left with the unworkable alternatives

of attempting to add over 250 additional cases to this case, or moving on behalf of all absent class members to intervene in this case. The policy of promoting class treatment is particularly strong where, as here, absent members obviously lack the means to separately justify the expense necessary to prosecute individual actions. *See Rosenblatt v. Omega Equities Corp.*, 50 F.R.D. 61, 64 (S.D.N.Y. 1970); *Phillips Petroleum, Inc. V. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit plaintiffs to pool claims which would be uneconomical to litigate individually."); *Newberg on Class Actions* §§ 18.37-.39 ("Interests of judicial economy and the small claimant's need for the class action device make class action ideal . . . .").

The Court's order promptly approving certification of this Class will discourage piecemeal litigation and the possibility of multiple suits resulting in inconsistent adjudications. *See Donovan v. Univ. of Texas at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981). From a practical viewpoint, neither alternative is preferable to class certification of the common issues. Accordingly, it is desirable to concentrate this litigation in one forum, in order to resolve all class members' rights in one proceeding. Indeed, that efficiency also benefits the Defendant. The maintenance of a class action is superior to the alternatives because the class members can pool their resources, present their most effective case in one proceeding and share the benefits if they succeed. Class certification is clearly provided for here and would result in an enormous savings of judicial resources and expenses to the parties.

The determination of a class action is committed to the broad discretion of the trial court. *See Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982). Although the requirements of Rule 23 are mandatory, courts should construe the Rule liberally and resolve all doubts in favor of class certification. *See id.*; *Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 476 (D. Pa. 1997) *(citing*

17

*In re School Asbestos Litig.*, 789 F.2d 996, 1011 (3rd Cir. 1986) and *Kahan v. Rosenstiel*, 424 F. 2d 161, 169 (3rd Cir. 1970)) ("Since the court may amend an order granting class certification, in a close case the court should rule in favor of class certification.").  Moreover, as stated previously, the substantive allegations of the pleadings are accepted as true for purposes of determining class certification, and the analysis under Federal Rule of Civil Procedure 23(b)(3) should not assess the underlying merits of the plaintiffs' cause of action.  Clearly this class should be certified.

## CONCLUSION

The class definition set forth by Plaintiffs meets all the requirements for certification under Federal Rule of Civil Procedure 23.  Certification of the Class will "best serve the ends of justice for the affected parties and . . . promote judicial efficiency."  *In re A.H. Robins Co., Inc.*, 880 F. 2d 709, 740 (4th Cir. 1989).  Indeed, classwide adjudication of the common issues affords class members the best opportunity to litigate their claims and also serves the interests of judicial economy.  Federal Rule of Civil Procedure 23(b)(3) is satisfied.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and: (1) certify this case as a class action; (2) approve a form of Notice of Class Action; (3) direct that the Notices be disseminated in the most cost effective and comprehensive manner; and (4) establish a deadline for requests for exclusion from the class.

Respectfully submitted,

BRETZ LAW OFFICES, LLC


By:     <u>s/ Melinda G. Young</u>
         Matthew L. Bretz, SC #15466
         Melinda G. Young, SC#24309
         1227 N. Main Street
         Hutchinson, KS 67501
         Telephone No.: (620) 662-3435
         Fax No.: (620) 662-3445
         matt@bretzpilaw.com
         melinda@bretzpilaw.com


         Stanley R. Juhnke, #008455
         400 West First Street
         Hutchinson, KS 67501
         Telephone No.: (620) 669-1022
         Fax No.: (620) 669-1027
         sjuhnke@juhnkelaw.com

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of March 2011, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following persons:

Daniel D. Crabtree
Heather S. Woodson
12 Corporate Woods
10975 Benson, Suite 550
Overland Park, Kansas 66210
dcrabtree@stinson.com
hwoodson@stinson.com

Anne C. Emert
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
aemert@stinson.com

ATTORNEYS FOR DEFENDANTS.


/s Melinda G. Young
Attorney for Plaintiffs