IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KENNETH BURDETTE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 10-1083-JAR |
| VIGINDUSTRIES, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiffs bring this action individually and as representatives of a putative class of individuals who reside and own property in the Careyville addition of Hutchinson, Kansas. Plaintiffs allege various tort claims under Kansas law stemming from land subsidence and sinkhole development that has occurred on and near abandoned salt mines at the Carey Salt Company solution mining plant in Careyville, Kansas, that is located on land now owned by defendant VigIndustries, Inc ("VigIndustries"). This matter is before the Court on defendant VigIndustries' Motion for Partial Summary Judgment on Plaintiff's Trespass Claims (Doc. 52) and Motion to Exclude Certain Expert Opinions of Dr. Ronald Yarbrough (Doc. 90). The Court previously granted plaintiffs an additional period of time to respond to defendant's motion for partial summary judgment pursuant to Fed. R. Civ. P. 56(d). That summary judgment motion is now fully briefed and defendant has filed a motion to exclude expert testimony offered by plaintiff in opposition to the motion for partial summary judgment. As described more fully below, the Court grants defendant's motion for partial summary judgment without reaching the issue of whether Dr. Yarbrough's opinions are admissible; therefore, the motion to exclude is

moot.

## I. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an

---

[1] Fed. R. Civ. P. 56(a).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[13] When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[14] Summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to

---

[7]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson*, 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[9]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Adams*, 233 F.3d at 1246.

[12]*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[14]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

secure the just, speedy and inexpensive determination of every action."[15]

## II.     Uncontroverted Facts

Consistent with the well-established standard for evaluating a motion for summary judgment, the following material facts are either uncontroverted or stated in the light most favorable to the nonmoving party.  Plaintiffs do not respond to the facts set forth by defendant in its motion.  When a party opposing summary judgment fails to comply with Rule 56(c) by addressing the moving party's assertions of fact, the Court may consider such facts as undisputed pursuant to Rule 56(e)(2).[16]  Accordingly, the facts set forth in defendants' motion for summary judgment are considered undisputed for the purpose of summary judgment.

In 2004, Vigindustries acquired real property in the southeastern portion of Hutchinson, Kansas.  Defendant's property contains a salt solution mining field where wells were drilled from 1903 through 1998.  This solution salt field has suffered multiple large solution sinkholes, including a large sinkhole that developed in 2005.  Vigindustries subsequently conducted testing in the area in 2008.

The residential neighborhood called Careyville is adjacent to the land owned by Vigindustries. Vigindustries agreed with the City of Hutchinson and the Kansas Department of Health and Environment ("KDHE") to purchase more than thirty homes in Careyville, in order to increase the buffer between the residential area and the closed solution wells.  Vigindustries has now purchased more than thirty parcels of property in Careyville and has removed the homes on those properties.

---

[15]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[16]*See also* D. Kan. Rule 56.1(b).

All of the plaintiffs own property in Careyville. Plaintiffs Robert and Tresia England's home in Careyville has multiple cracks in ceilings and walls, uneven doors and windows, uneven floors, and cracks in the foundation and concrete around the house. Their laundry room pulled away and separated from the rest of the house. They made repairs, but the room has separated from the rest of the house once again.

Plaintiff Stephanie Brown's home in Careyville has multiple cracks in the ceilings and walls, cracks in the concrete foundation, and cracks in the floors. Brown used to have a usable finished basement, but the foundation has cracked and now water flows in during rain and runs all across the tilted basement floor. She also has flooding problems where her driveway meets the street curbing. The City of Hutchinson has replaced the entire section of curbing twice, but the area continues to sink and the flooding has returned.

Plaintiffs Glen and James West's home in Careyville has suffered multiple areas of damage and undergone extensive repairs. The driveway sunk and tilted and the basement walls began to cave, so they poured an entirely new basement and driveway. Despite the repairs, the driveway has tilted and sunk again. The Wests had to build a wooden deck over the area where the driveway and patio sunk in order to protect their elderly mother from falling on the portions of concrete that now stick up. They have had multiple problems with the sewer line busting through the bathroom wall and eventually replaced the main sewer line after it collapsed. Despite this replacement, the sewer line appears to still be under immense pressure and has once again tilted and pushed through the bathroom wall. The Wests have replaced many doors and windows, including the entire frame due to unleveling. They have had to bring in multiple loads of dirt over the years they lived in the house in order to fill in and level areas that have

subsided in the yard and around the foundation. Despite all the Wests' efforts to properly maintain the house over the years, their homeowners' insurance was recently canceled due to cracks in the driveway.

Plaintiffs Danny and Sharon Sidebottom's home in Careyville suffered a complete basement collapse while they were inside the home. The Sidebottoms had to have an entirely new basement constructed. Their homeowners insurance would not cover the collapsed basement and resulting damage. They have also had problems with subsidence in the driveway and have had to bring in driveway rock to fill in subsided areas. The driveway has subsided once again and more rock is needed. Another unnamed Careyville home has suffered a collapse of the basement wall. The homeowners insurance carrier has denied coverage.

Plaintiffs Kenneth and Linda Burdette's home in Careyville has suffered repeated cracks in the ceilings and walls. The roof supports had to be repaired/replaced because they had become disconnected from the house. The Burdettes have a large hole under their driveway and garage. Ken Burdette has been throwing things down the hole for years in an attempt to fill the hole,
but despite years of filling the hole, the hole continues to remain very deep. Another homeowner in Careyville describes a similar hole under her driveway as reported in the Hutchinson News back in 1978: "At the end of our driveway there's a spot that my husband has been trying to fill for years. He's thrown all kinds of things in there . . . shingles, two or three truck loads of them, and cement blocks. And honestly, they just disappear."[17]

The earth movement in the Careyville neighborhood has been gradual and has been

---

[17]Doc. 87, Ex. 12.

occurring for a very long time.  Expert geologist, Ronald E. Yarbrough, Ph.D., P.G. opines that homes and structures in Careyville have suffered damage caused by salt mine subsidence.

Plaintiffs know of no occasion that either Vigindustries or anyone who owned the land now owned by Vigindustries or who operated the salt wells on that land ever came onto their property without plaintiffs' permission. Several plaintiffs have testified that various tangible and intagible foreign matter has entered their property, including skunks and possums, standing water, noise, lights, adverse views of neighboring property, snowdrifts, and tremors.  Several other plaintiffs admit that defendant has not entered nor caused any foreign matter, tangible or intangible, to enter their land.

## III.    Discussion

Plaintiffs' First Amended Complaint alleges a claim for trespass, among other things, and alleges that Vigindustries "physically invaded" their property "through prior mining activities and the continued failure to properly maintain the wells," and that the alleged invasion "directly and proximately caused damage to their property." Defendant moves for summary judgment on this claim arguing there is no evidence that: (1) Vigindustries or its predecessors intentionally entered plaintiffs' property; and (2) the damage to plaintiffs' property is a result of Vigindustries' conduct.  On this second point, defendant argues that the Court should exclude or decline to consider the report prepared by Dr. Yarbrough.

To establish the intentional tort of trespass under Kansas law, plaintiffs must prove that defendant "entered or remained upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise."[18]  The Restatement (Second) of Torts, cited

---

[18]*Riddle Quarries v. Thompson*, 279 P.2d 266, 269 (Kan. 1955); *see also Pagel v. Burlington N. Santa Fe. Ry. Co.*, 316 F. Supp. 2d 984, 988 (D. Kan. 2004).

with approval by the Kansas Supreme Court,[19] provides:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
> (b) remains on the land, or
> (c) fails to remove from the land a thing which he is under a duty to remove.[20]

With respect to the element of intent, the Kansas Supreme Court has explained:

> The concept of trespass should be used, if at all, only where defendant intends to have the foreign matter intrude upon the land, or where defendant's act is done with knowledge that it will to a substantial certainty result in the entry of foreign matter. Liability for a continuing trespass is premised on the original intrusion being trespassory. Thus, if the original intrusion is not trespassory, mere knowledge that a substance reached the land of another is insufficient to establish a continuing trespass.[21]

Therefore, plaintiff must show that there was entry and that the entry "was purposeful, or that it was substantially certain to occur."[22]

Defendants argue on summary judgment that there is no evidence that defendant or its predecessors in interest entered plaintiffs' land. In its initial brief, defendant addresses each type of tangible or intangible entry of foreign matter that plaintiffs could potentially claim constitutes trespass in this matter, based on plaintiffs' deposition testimony. Defendant acknowledges that certain plaintiffs contend some foreign matter has entered their land since the time that defendant

---

[19]*Riddle Quarries*, 279 P.2d at 269–70; *Nida v. Am. Rock Crusher Co.*, 855 P.2d 81, 86 (Kan. 1993).

[20]Restatement (Second) Torts § 158.

[21]*United Proteins, Inc. v. Farmland Indus., Inc.*, 915 P.2d 80, 83 (Kan. 1996) (quotations and citations omitted).

[22]*Id.*

removed the thirty houses adjacent to Careyville; some plaintiffs testified at their depositions to an increase in either skunks and possums, standing water, noise, lights, adverse views of neighboring property, snowdrifts, or tremors.  However, plaintiffs do not argue in their response that any of this foreign matter forms the factual basis of their claim of trespass.  Instead, plaintiffs rely entirely on the Kansas Supreme Court's decision in *Nida v. American Rock Crusher Co.*, a case that considered the accrual date for the statute of repose in the context of trespass claims for land subsidence.[23]

*Nida* involved a claim for trespass where the plaintiffs' property sank approximately ten feet due to subsurface mining operations underneath the plaintiffs' property that had ceased thirty years before the damage occurred.  The "sole issue" decided by the Kansas Supreme Court was "whether the [plaintiffs'] action is barred by the 10-year statute of repose."[24]  In deciding this issue, the Kansas Supreme Court carefully distinguished between the actionable wrong in actions for negligence and trespass for purposes of determining the accrual date:

> The theory of a negligence action differs in that the wrongful act is the act of the defendant.  Once it takes place the negligence has occurred, even though the harmful consequence may not be manifest until later.
> Although a negligence cause of action usually runs from an act of a defendant, a trespass action need not, and often would not, run from an act of defendant.  There is no trespass until the entry is accomplished and the damage occurs (or has begun to occur, as in a case of continuing trespass).  The trespass counterpart of the negligence "wrongful act" is the entry and the damage.  In the present case, the entry was accomplished and the damage occurred when the surface fell.
> *Dobson*, *Harding*, and *Admire Bank* were negligence and product liability cases.  They are distinguishable from the present case in that the "act giving rise to the cause of action" was the

---

[23]*Nida*, 855 P.2d at 82.

[24]*Id.*

9

> wrongful act of negligence or manufacturing and selling a
> defective or harmful product. Here, the "act giving rise to the
> cause of action" was the subsidence of the surface and not the
> mining operations. The mining of the coal was not wrongful and
> did not give rise to a cause of action during or upon completion of
> the mining of the coal. We held in *Audo* that the surface owner has
> an "absolute right to subjacent support unless that right has been
> distinctly waived." Further, the subjacent support right entitles a
> surface owner to damages when injury to the surface actually
> occurs. Here, as in *Audo*, the subsiding of the land is the "act
> giving rise to the cause of action," and, since the injury to the
> surface was not immediately ascertainable, the statute of
> limitations does not begin to run until it was manifest. Thus, the
> action by the Nidas was not barred by K.S.A.1992 Supp.
> 60-513(b).[25]

As applied to this case, plaintiffs' negligence action focuses on defendant's conduct that allegedly caused plaintiffs' property damage, while the trespass action would run from the entry and damage that occurred when the surface fell on plaintiffs' property.

But the issue on summary judgment is not when plaintiffs' cause of action for trespass accrued. Instead, the Court is asked to consider whether plaintiff can establish a genuine issue of material fact that defendant intentionally entered, or caused some foreign matter to enter, plaintiffs' property. On this point, plaintiffs rely on the following language from *Nida*:

> The actionable wrong is the intrusion upon the surface of the land
> which interfered with the right of the surface owner to exclusive
> possession and enjoyment of the land and which was a direct result
> of some act committed by the defendant. See Prosser & Keeton on
> Torts § 13 (5th ed. 1984). In a trespass action, the intrusion and
> the interference and the occurrence of damage are concurrent. The
> act committed by the defendant may have taken place much
> earlier, but there was no trespass until the surface was affected.[26]

Defendant argues that *Nida* does not obviate the need for plaintiffs to prove an intrusion onto

---

[25] *Id.* at 86–87 (quoting *Audo v. W. Coal & Mining Co.*, 162 P. 344, 346–47 (Kan. 1917)) (citations omitted).

[26] *Id.* at 86.

10

their land and that the intrusion was intentional. The Court agrees. In *Nida*, whether defendant intruded on plaintiffs' land was not at issue—the defendant's prior mining operation was underneath plaintiffs' property. It also does not appear that intent was at issue. Additionally, *Nida* cited the Restatement (Second) of Torts § 158 for the proposition that "an action for surface collapse due to inadequate subjacent support is in the nature of a trespass on real estate, an intentional tort."[27] Therefore, the Court does not find that *Nida* changed the elements of a cause of action for trespass in the case of land subsidence such that entry and intent are not requisite elements.

Because defendant has met its burden on summary judgment of showing an absence of evidence on the essential elements of entry and intent, plaintiff must point to evidence in the record that creates a genuine issue of material fact that defendant purposefully or with substantial certainty entered or caused foreign matter to enter plaintiffs' property. Plaintiffs' response to the summary judgment motion argues that the damage to plaintiffs' homes was caused by land subsidence due to their properties' close proximity to the abandoned salt solution mining field.[28] In plaintiffs' view, evidence of land subsidence is all that is required to establish their claim for trespass. But assuming as true that the sinkhole development and land subsidence on defendant's land caused the land subsidence on plaintiffs' land, it does not tend to show that defendants caused foreign matter to enter plaintiffs' property and more importantly, that the

---

[27]*Id.*

[28]The Court acknowledges Dr. Yarbaugh's opinion that "it is possible that an old salt solution operation existed at one time in the now residential portion of Careyville." Doc. 91, Ex. A at 4. However, plaintiffs do not cite to nor rely on this opinion in responding to the motion for summary judgment. Instead, they cite to a different opinion by Dr. Yarbaugh, that the damage to plaintiffs' property was caused by "the closing of voids subjacent to the structures." Doc. 87 at 9–10. Even assuming that plaintiffs argued in opposing summary judgment that salt mines underneath plaintiffs' property caused the land subsidence, they do not present evidence beyond this speculative opinion and there is absolutely no evidence that such mining was conducted by defendant.

11

intrusion was purposeful or substantially certain to occur. Instead, the evidence all relates to the existence of sinkholes on the abandoned salt field—on VigIndustries' land. There is no evidence in the record that defendant's conduct was "directed at" plaintiffs' land.[29] In the absence of any genuine issue of material fact on these essential elements of trespass, no reasonable jury could find in favor of plaintiffs.

Because the Court finds that plaintiffs are unable to establish a genuine issue of material fact on essential elements of their trespass claim, as described above, the Court need not address defendant's motion to exclude certain opinions rendered by Dr. Yarbaugh and finds that motion to be moot and premature. The Court will proceed to set this matter for hearing as soon as practicable on plaintiff's Motion for Class Certification on the remaining claims of negligence and nuisance.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Partial Summary Judgment on Plaintiff's Trespass Claims (Doc. 52) is **granted**.

**IT IS FURTHER ORDERED** that defendant's Motion to Exclude Certain Expert Opinions of Dr. Ronald Yarbrough (Doc. 90) is **moot**.

**IT IS SO ORDERED**.

Dated: October 25, 2011

                                          S/ Julie A. Robinson
                                          JULIE A. ROBINSON
                                          UNITED STATES DISTRICT JUDGE

---

[29]*See Joseph v. Stephens & Johnson Operating Co.*, No. 10-1222-SAC, 2011 WL 4496624, at *7 n.2 (D. Kan. Sept. 27, 2011) (discussing *Nida*, 855 P.2d at 85). In *Joseph*, Judge Crow allowed the plaintiffs to amend the pretrial order to add a claim of trespass where the plaintiffs suffered subsidence damages allegedly attributable to the plugging of an old oil and gas saltwater disposal well located on the plaintiffs' property. Judge Crow allowed amendment, but deferred any decision on whether the defendants' conduct was intentional until the matter could be fully briefed in a dispositive motion. *Id.* at 7.